UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RICHARD CORNELL and JOYCE CORNELL, | ) )  Case No. 3:21-cv-298 |
| Plaintiffs, | )  Judge Travis R. McDonough |
| v. | )  Magistrate Judge Debra C. Poplin |
| HOA MANAGEMENT, INC. and BERKELEY PARK HOMEOWNERS ASSOCIATION, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 24). For the reasons set forth below, Defendants' motion will be **GRANTED**.

### I. BACKGROUND[1]

At all times relevant to this dispute, Plaintiffs Richard and Joyce Cornell owned property in the Berkeley Park neighborhood in Knox County, Tennessee, and were members of the Berkeley Park Homeowners Association ("Berkeley Park HOA"). (Doc. 23, at 1.) Defendant HOA Management, Inc. ("HOA Management") is a corporation, with its principal place of business in Tennessee, that contracted with Defendant Berkeley Park HOA to conduct

---

[1] The following factual allegations from Plaintiffs' amended complaint are taken as true for the purposes of deciding Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).

management operations in the Berkeley Park neighborhood.  (*Id.* at 1–2.)  The contract between Berkeley Park HOA and HOA Management provided as follows:

> Manager shall use its best efforts to collect all general and special assessments as they become due and payable each month from all unit owners and all monies due from any sources, which are obligated to and for the benefit of the Association. Manager shall be entitled to receive **ALL** late fee and collection expenses or charges (less any Collection Costs paid for by the Association) approved by the Board and charged as a collection fee against a past due assessment.

(*Id.* at 2.)  The contract further provided:

> The Association shall indemnify and hold Manager and its employees, agents, officers and directors harmless from liability for all claims, costs, suits and damages, including attorney's fees ("Claims") arising directly or indirectly out of or in conjunction with the management and operation of Property, and from liability for injuries suffered by any person relating to the Property . . . .  The agreement to indemnify Manager relates to any acts or omissions, statements or representations made by Manager in the performance and/or non-performance of Manager's duties and relating to all contractual liabilities which may be alleged or imposed against Manager.

(*Id.* at 6–7.)

Berkeley Park HOA held an annual meeting on October 22, 2019, at which it distributed the proposed budget for the 2020 year to the homeowners who were present at the meeting.  (*Id.* at 3.)  The proposed budget provided that quarterly HOA dues would increase from $425.00 to $495.00 on April 1, 2020.  (*Id.*)  Berkeley Park HOA did not provide the homeowners with the proposed budget ten days prior to the meeting, which Plaintiffs allege was "required."  (*Id.*)  Homeowners who did not attend the meeting did not receive a copy of the proposed 2020 budget.  (*Id.*)

On February 1, 2020, HOA Management notified Plaintiffs of the scheduled dues increase, and, on April 1, 2020, Plaintiffs were assessed $495.00 for their quarterly dues.  (*Id.*)  Plaintiffs refused to pay the increased amount on the grounds that it had been improperly assessed.  (*Id.*)  Because of their refusal to pay the additional $70.00, HOA Management

assessed a $6.38 late fee and $10.00 administrative fee against Plaintiffs on April 30, 2020. (*Id.*) On July 1, 2020, HOA Management again assessed quarterly dues against Plaintiffs in the amount of $495.00 and attempted to collect the $86.38 based on the unpaid $70.00 of dues and the $16.38 in fees associated therewith. (*Id.*) Plaintiffs again refused to pay the increased amount and further refused to pay the $86.38 assessed in relation to the April payment. (*Id.*) They were accordingly assessed another $6.38 late fee and $10.00 administrative fee. (*Id.*) On August 7, 2020, Plaintiffs paid quarterly dues in the amount of $425.00. (*Id.* at 4.)

On October 1, 2020, HOA Management assessed Plaintiffs another $495.00 in quarterly dues and $172.76 in unpaid dues and fees. (*Id.*) On October 6, 2020, HOA Management sent the following notice to Plaintiffs in attempt to collect the $172.76:

### FAIR DEBT COLLECTION ACT NOTICE

> The fair debt collection [*sic*] provides for the furnishing to you the following: [(1)] This is a communication made to collect a debt; (2) Any information objected will be used for that purpose; and (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the debt, the debt collector will assume the debt is valid. A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion of the debt, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of the verification or judgment against the consumer and copy of the verification or judgment will be mailed to the consumer; and a statement that if the consumer makes written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(*Id.*) Plaintiffs still refused to pay the $172.76 despite believing, based on the notice, that their refusal could result in negative information being transmitted to credit-reporting agencies. (*Id.*) On October 26, 2020, Plaintiffs paid $425.00 for quarterly dues and, on October 31, 2020, HOA Management assessed another $16.38 in fees against them. (*Id.* at 4–5.)

On November 5, 2020, counsel for Plaintiffs provided a written notice to HOA Management, demanding that it cease and desist with its debt-collection efforts on the grounds

3

that Plaintiffs did not owe the alleged debt. (*Id.* at 5.) On January 1, 2021, HOA Management assessed another $495.00 in dues and attempted to collect the outstanding balance of $259.14 it believed Plaintiffs owed. (*Id.*) On January 20, 2021, Plaintiffs again paid $425.00 and wrote HOA Management, admonishing them for continuing with their efforts to collect in excess of this amount despite the notification from their counsel. (*Id.*) Another $16.38 in fees were assessed on January 31, 2021. (*Id.*) On February 1, 2021, Plaintiffs paid another $425.00 for quarterly dues. (*Id.*)

On March 31, 2021, HOA Management assessed Plaintiffs an additional $232.00, purportedly for court costs associated with putting a lien on Plaintiffs' property. (*Id.*) However, Plaintiffs later learned that HOA Management had not caused the lien on the property to be placed, and were later credited for the $232.00 amount. (*Id.* at 5–6.) On April 1, 2021, HOA Management again sought payment for $495.00 in quarterly dues and additional late fees and payments amounting to $345.52. (*Id.* at 6.) Plaintiffs again paid only $425.00 in dues for the quarter, and HOA Management assessed them another $16.38 in fees. (*Id.*) HOA Management attempted to collect $663.00 in late payments and fees on April 30, 2021, and again on July 1, 2021, when it assessed the next $495.00 in quarterly dues. (*Id.*) On July 13, 2021, counsel for Plaintiffs again wrote to HOA Management, asserting that the debt was invalid and "advis[ing] HOA Management that [Plaintiffs] were reserving their legal rights and remedies." (*Id.*)

Plaintiffs filed this action on August 16, 2021, asserting a single claim for relief under the Fair Debt Collection Practices Act of 1978 ("FDCPA"). (*See* Doc. 1.) On October 21, 2021, the Court granted Plaintiffs leave to amend their complaint and denied Defendants' first motion to dismiss with leave to refile. (Doc. 22.) Plaintiffs' amended complaint adds some additional allegations but does not add any causes of action. (*See* Doc. 23.) On November 1, 2021,

Defendants filed a motion to dismiss the amended complaint for failure to state a claim. (Doc. 24.) Defendants' motion is ripe for adjudication.

## II. STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman*, 484 F.3d at 859. This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. ANALYSIS

### A. Plaintiffs' Claim Against HOA Management

Defendants argue that Plaintiffs' claim against HOA Management fails because HOA Management is not a debt collector for the purposes of the FDCPA. (Doc. 24, at 2.) To state a claim for violation of the FDCPA, Plaintiffs must allege facts showing that: (1) they are "consumers" under the FDCPA; (2) "the 'debt' arose out of transactions which are primarily for personal, family or household purposes"; (3) HOA Management is a "debt collector" under the FDCPA; and (4) HOA Management "violated the prohibitions set forth in [15 U.S.C.] § 1692e." *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015) (citations and internal quotation marks omitted). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA specifically excludes from the definition:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

6

15 U.S.C. § 1692a(6)(F). Plaintiffs have alleged sufficient facts to support an inference that HOA Management "regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." *Id.*; (*see* Doc. 23, at 2 (alleging that HOA Management agreed to collect all general and special assessments on behalf of Berkeley Park HOA as they become due).) Accordingly, HOA Management is a debt collector under the FDCPA unless an exception applies. *See* 15 U.S.C. § 1962a(6).

Defendants argue that the exceptions in § 1692a(6)(F)(i) and (iii) apply to HOA Management such that it is not a debt collector for the purposes of the FDCPA. (Doc. 24, at 2–8.) In a recent case, the Sixth Circuit acknowledged that other federal courts have found that property managers fall within these exceptions. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 481 (6th Cir. 2020) (collecting cases). However, the Sixth Circuit has not decided the scope of these exceptions as they relate to property managers, finding in *Bates* that the facts of the case did not require such a decision. *Id.* The Court therefore looks to the persuasive authority of other courts to determine whether either of these exceptions applies.

### 1. 15 U.S.C. § 1692a(6)(F)(i)

Defendants first argue that HOA Management is exempted from the FDCPA's definitions of "debt collector" pursuant to 15 U.S.C. § 1692a(6)(F)(i) because its attempts to collect from Plaintiffs were incidental to its fiduciary obligations to Berkeley Park HOA. (Doc. 24, at 3.) In determining whether the debt-collection efforts were "incidental to a bona fide fiduciary obligation," at least some courts have looked to state law to determine whether a fiduciary duty is owed. *See, e.g.*, *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012) (consulting Georgia law).

In Tennessee, "a fiduciary relationship arises when one person reposes special trust and confidence in another person and that other person—the fiduciary—undertakes to assume responsibility for the affairs of the other party." *Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011) (citations and internal quotation marks omitted). The Tennessee Court of Appeals has recognized two categories of fiduciary relationships: "relationships that are fiduciary per se (e.g., attorney/client, guardian/ward) and relationships that are 'confidential' due to one party's ability to exercise 'dominion and control' over another party." *Innerimages, Inc. v. Newman*, 579 S.W.3d 29, 49 (Tenn. Ct. App. 2019) (citations omitted). "[C]onfidential relationships can assume a variety of forms," and the existence of such a relationship is a case-specific question of fact. *Id.* (citations omitted). Defendants argue that HOA Management had a fiduciary *per se* relationship with Berkeley Park HOA.

There is very little Tennessee precedent detailing which relationships are fiduciary *per se*, and no Tennessee Supreme Court case has decided whether property managers owe fiduciary duties to homeowners' associations. In fact, only a handful Tennessee cases—none from the Supreme Court of Tennessee—use the term "fiduciary *per se*." None of these cases, which are largely unpublished, provides a comprehensive list of relationships that are fiduciary *per se*. However, the following examples appear in some Tennessee Court of Appeals cases: attorney-client, guardian-ward, and conservator-incompetent. *See, e.g.*, *Akers v. McLemore Auction Co., LLC*, No. M2012-02398-COA-R3-CV, 2014 WL 2442951, at *3 (Tenn. Ct. App. May 27, 2014); *Foster Bus. Park, LLC v. Winfree*, No. M2006-02340-COA-R3-CV, 2009 WL 113242, at *12 (Tenn. Ct. App. Jan. 15, 2009). The cases cited in support of these examples are generally undue-influence cases in which Tennessee courts determined whether a person in a "confidential relationship" with the testator or conveyor of property improperly influenced the conveyance.

8

*See, e.g.*, *Kelly v. Allen*, 558 S.W.2d 845, 847–48 (Tenn. 1977); *Mitchell v. Smith*, 779 S.W.2d 384, 388–89 (Tenn. Ct. App. 1989); *Parham v. Walker*, 568 S.W.2d 622, 624–25 (Tenn. Ct. App. 1978). Thus, the contours of "fiduciary *per se*" relationships in Tennessee remain largely undefined.

Defendants urge the Court to rely on one of these unpublished Tennessee Court of Appeals cases to conclude that property-management relationships are fiduciary *per se*. (Doc. 24, at 3 (citing *Key v. Lyle*, No. M2009-01328-COA-R3-CV, 2010 WL 1486908 (Tenn. Ct. App. Apr. 13, 2010)).) In *Key*, eighteen heirs coinherited a property that was subject to a long-term lease to a company of which four of the heirs were shareholders. 2010 WL 1486908, at *1. Pursuant to a written agreement, one of the shareholder heirs was named as manager of the property. *Id.* When the lessee fell behind in rent payments, the non-shareholder heirs filed suit against the property manager for failing to declare default and re-let the property. *Id.* The non-shareholder heirs argued that all the shareholder heirs had breached their fiduciary duty as co-owners of the property and that the property manager had also breached a fiduciary duty based on her "fail[ure] to discharge her duty to protect the property owners from the actions of the tenant." *Id.* at *4. The court found that the relationship between the co-owners was a confidential relationship such that fiduciary duties were owed and that "[t]he relationship between Carolyn Lyle, as property manager, and Appellants was fiduciary *per se*." *Id.* at *5. The Court did not explain what renders a relationship "fiduciary *per se*" or whether all property-manager-and-owner relationships are fiduciary *per se* and whether the same is true of property-manager-and-homeowners-association relationships. *See id.*

However, *Key* appears to stand alone in its holding, and at least one Tennessee court has denied the existence of a *per se* fiduciary relationship between a property-management company

9

and a homeowners association. *See Condo. Mgmt. Assocs., Inc. v. Fairway Vill. Owner's Ass'n, Inc.*, No. W2009-00688-COA-R3-CV, 2010 WL 424592, at *10 (Tenn. Ct. App. Feb. 8, 2010) [hereinafter "*Fairway Village*"]. The *Fairway Village* court rejected the argument that the management company was a fiduciary of the homeowner's association solely because it was entrusted to conduct all the financial and other affairs of the association and held that they were not in a fiduciary *per se* relationship. *See id.* at *9–10. After reviewing the management agreement in detail, the court also affirmed the lower court's finding that no confidential relationship had been formed. *Id.* at *10 ("Instead, the evidence reveals that the parties were merely engaged in an arm's length business transaction for which no fiduciary status is conferred." (citations omitted)); *cf. Briggs & Tratton Power Prods. Grp., LLC v. Osram Sylvania, Inc.*, No. W2016-01799-COA-R3-CV, 2017 WL 5992361, at *11 (Tenn. Ct. App. Dec. 4, 2017) (holding that the relationship between property-management company and the commercial lessee of the property was not fiduciary or confidential in nature because "the parties were dealing with each other in an arm's length commercial transaction").

Factually, this case is more akin to *Fairway Village* than *Key*. It does not appear from the allegations in the amended complaint that HOA Management was responsible for leasing any properties in Berkeley Park or that it had authority to contractually bind Berkeley Park HOA. (*See* Doc. 23, at 1–2.) Plaintiffs allege only that HOA Management "owed contractual duties to Berkeley Park HOA to manage Berkeley Park" and that one such contractual duty was to collect assessments from homeowners. (*Id.*) The Court is not persuaded that the Tennessee Supreme Court would follow *Key* in this case, especially when courts deciding other cases have found no fiduciary relationship between similar parties. *See Briggs & Tratton*, 2017 WL 5992361, at *11; *Fairway Village*, 2010 WL 424592, at *10. Accordingly, the Court concludes that the

10

relationship between HOA Management and Berkeley Park HOA is not "fiduciary *per se*." Additionally, the complaint lacks allegations from which the Court can determine that there was a confidential relationship between Defendants or that HOA Management exercised dominion and control over Berkeley Park HOA.[2] The Court will not grant Defendants' motion to dismiss on the basis that its attempts to collect from Plaintiffs were incidental to a fiduciary duty owed to Berkeley Park HOA.

### 2. 15 U.S.C. § 1692a(6)(F)(iii)

Defendants next contend that the exception in 15 U.S.C. § 1692a(6)(F)(iii) shields HOA Management from liability as a debt collector under the FDCPA. (Doc. 24, at 7–8.) The exception excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Defendants argue that, because Plaintiffs allege that HOA Management was obligated to collect assessments "as they become due and payable each month," HOA Management obtained the right to collect the assessments before they were overdue. (Doc. 24, at 7.) Defendants also represent that "[c]ourts have repeatedly applied this exception to property managers like HOA Management who collect homeowners' association

---

[2] Defendants cite *Harris*, 702 F.3d 1298, in support of their assertion that "Federal Courts and Courts of Appeals have repeatedly held that a property manager who collects a debt as the agent of a homeowners' association is not a 'debt collector' under the FDCPA. (Doc. 24, at 6.) However, in *Harris*, which reviewed a grant of summary judgment not a motion to dismiss, the management agreement governing the property-management company's relationship with the homeowners association specifically stated that the management company acted as the associations "sole and exclusive agent." 702 F.3d at 1300. The court also noted that the management company negotiated and entered into contracts on behalf of the association. *See id.* It was on these grounds that the court held there was a fiduciary relationship between the parties. *Id.* at 1302. Because there are no such allegations in the amended complaint, *Harris* is inapplicable at this stage of the litigation.

fees," but they cite only one out-of-circuit district court case in support. (*Id.* (citing *Alexander v. Omega Mgmt., Inc.*, 67 F. Supp. 2d 1052 (D. Minn. 1999)).) Plaintiffs do not address this argument in their response to Defendants' motion. (*See* Doc. 25.)

Despite Defendants' sparse citations, they are correct that other courts that have considered the application of § 1692a(6)(F)(iii) to property-management companies have generally held that they are excluded from the FDCPA's definition of debt collector. The Ninth Circuit specifically held that a property manager responsible for collecting rent from tenants on behalf of an apartment complex was not a debt collector under the FDCPA, because the property manager acquired the plaintiff's debt before it was payable. *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011). The court reasoned that § 1692a(6)(F)(iii) applied because, "as a matter of logic[,] . . . a debt not yet payable cannot be in default." *Id.* The Fourth and Seventh Circuits have reached similar conclusions. *See Fontell v. Hassett*, 574 F. App'x 278, 279 (4th Cir. 2014) ("[A] property management company, like [Defendant], is not a debt collector where it becomes responsible for collecting the subject debt before it was in default."); *Carter v. AMC, LLC*, 645 F.3d 840, 843–44 (7th Cir. 2011) (holding that property manager for apartment building was not a debt collector, because it obtained an interest in the plaintiff's rent before she fell behind in her payments).

Neither the Supreme Court nor the Sixth Circuit has explicitly considered this question. However, with regard to 15 U.S.C. § 1692a(6)(F)(iii), the Sixth Circuit has held "an entity that did not originate the debt in question but acquired it and attempts to collect on it . . . is either a creditor"—and thus not subject to the FDCPA—"or a debt collector depending on the default status of the debt at the time it was acquired." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012). "The same is true of a loan servicer, which can either stand in the shoes of a

creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred." *Id.*

Based on the language of § 1692a(6)(F), the Sixth Circuit's interpretation thereof, and the decisions of other Courts of Appeals in comparable circumstances, the Court finds that the HOA Management is not a debt collector under the FDCPA, because the debt it sought to collect from Plaintiffs was not in default at the time it "obtained" the debt. It is evident from the allegations in the first amended complaint that HOA Management was collecting assessments on behalf of Berkeley Park HOA before the October 22, 2019 annual meeting and before Plaintiffs refused to pay the increased quarterly dues. (*See* Doc. 23, at 2–3.) Thus, their "debt" was not in default at the time HOA Management assumed the position of collecting such assessments. Accordingly, taking the well-pleaded factual allegations as true for the purposes of Defendants' motion to dismiss, HOA Management is not a debt collector under the FDCPA.

### 3. *Equitable Estoppel*

Plaintiffs argue that, even if it does not fall within the FDCPA's definition of a debt collector, HOA Management is equitably estopped from arguing that it is not a debt collector. (Doc. 25, at 12–16.) Specifically, they argue that, by representing itself as a debt collector in the October 6, 2020 collection notice, HOA Management made a misrepresentation of material fact upon which Plaintiffs relied to their detriment. (*See id.* at 16.)

"Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases." *Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010) (quoting *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir.2004)). To succeed on an equitable-estoppel claim, the party asserting estoppel must show that: (1) "the party to be estopped . . . used conduct or language amounting to a representation of material fact"; (2) "that party [was]

aware of the true facts"; (3) "that party . . . had an intention that the representation be acted on, or . . . conducted himself in such a way toward the party asserting estoppel that the latter had a right to believe that the former's conduct was so intended"; and (4) "the party asserting estoppel . . . detrimentally and justifiably relied on the representation." *Thomas v. Miller*, 489 F.3d 293, 302 (6th Cir. 2007). There are no Sixth Circuit or Supreme Court cases applying the doctrine of equitable estoppel to keep a party from arguing that it is not a debt collector under the FDCPA, and, even to the extent this defense is applicable under these circumstances, Plaintiffs have not shown that Defendants should be estopped.

In the amended complaint, Plaintiffs allege that, based upon the language in the notice, they believed that "debt-collection efforts had been commenced by a debt collector" and that "refusal to pay the alleged debt would result in derogatory information being provided to credit-rating agencies." (Doc. 23, at 4.) They further allege that, despite these beliefs, the still refused to pay. (*Id.*) But, to successfully claim estoppel, Plaintiffs must have detrimentally relied on the alleged misrepresentation—that is, they "must have relied on [HOA Management's] conduct in such a manner as to change [their] position for the worse." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984) (citations and internal quotation marks omitted). The detriment suffered must have been "actual and substantial." *Deschamps v. Bridgestone Americas, Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 276 (6th Cir. 2016). Here, Plaintiffs affirmatively allege that they did not change their course of behavior in response to the notice and the only detriment they alleged they suffered was their belief that negative information would be circulated and affect their credit. (*See* Doc. 23, at 4 ("Notwithstanding, the Cornells refused to pay.").) Plaintiffs do not allege that such harm occurred or that they were induced into

any sort of harmful conduct on the basis that HOA Management referred to itself as a debt collector. Accordingly, their attempt to equitably estop Defendants fails.

Moreover, whether an entity is a debt collector under the FDCPA is a question of law for the Court to decide. *See Stamper v. Wilson & Assocs., P.L.L.C.*, No. 3:09-CV-270, 2010 WL 1408585, at *9 (E.D. Tenn. Mar. 31, 2010) ("The question of whether defendants qualify as "debt collectors" is a legal question which requires the court to examine the nature of the defendant's business. The fact that FDCPA disclaimers were sent in connection with a non-judicial foreclosure proceeding does not automatically transform the defendants into 'debt collectors.'"). Thus, HOA Management's self-identification as a "debt collector" in the collection notice was not a misrepresentation of fact but a legal conclusion subject to judicial examination and resolution. Plaintiffs' equitable-estoppel claim fails for this reason, too, and the FDCPA claim against HOA Management will be **DISMISSED** because it is not a debt collector.

### B. Plaintiffs' Claim Against Berkeley Park HOA

Lastly, Defendants argue that Plaintiffs' claim against Berkeley Park HOA should be dismissed if the claim against HOA Management is dismissed. (Doc. 24, at 8.) Plaintiffs admit that the only basis for their only claim against Berkeley Park HOA is an indemnification clause in the contract between HOA Management and Berkeley Park HOA. (Doc. 25, at 16–17; *see also* Doc. 23 (alleging that "Berkeley Park HOA is contractually obligated to indemnify HOA Management for its [allegedly] illegal actions").) Because the Court has found that Plaintiffs cannot state an FDCPA claim against HOA Management, their claim against Berkeley Park HOA based on indemnification also fails. The Court will therefore **DISMISS** the claim against Berkeley Park HOA.

### IV. CONCLUSION

15

For these reasons, Defendants' motion to dismiss is **GRANTED**, and this case will be **DISMISSED** in its entirety.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**